Please be seated. Your Honor, the first case of the morning, call 219-0026, James Sweeney and the International Union of Operating Engineers, Local 50, v. Andrew Gasser. On behalf of Mr. Robert T. Hanlon, on behalf of both attorneys, Mr. Brian P. Dimon. Mr. Hanlon. Mr. Gasser. Good morning. Justice McLaren, Robert Kitt, Judge Spence. I wish to welcome my opposing counsel, Mr. Deamer, Mr. Pasta, and recognize the people that have come here today to observe this, including the media. When I was preparing for my argument today, I looked at the emblem on the appellate court's shield in the Latin language of via justicia, which is a reference to let justice be done, coming from a maxim in the law that, let justice be done, though the heavens fall. And that reminded me of another maxim in the law that you can't do things indirectly that you can't do directly. And what I believe that this case really boils down to is an effort to do those things indirectly that could not be done directly. And by that, I mean that the Road District Highway Commissioner could not have executed a contract directly with the Sun Laws to perpetuate their salaries and positions that came by way of the relationships between them and at least sustain through their state and local relationships. As I indicated within my brief, that this particular township was under, Road District was underneath the control of one family for decades. That's politics, right? That's politics. Bob, how about we get to the issues? So this started out as a FOIA complaint, correct? Sure. And do you agree that a public body must comply with proper requests for disclosure unless the requested material falls within a specific and narrowly construed statutory exception? Do you agree with that? Well, I agree that the statute sets forth that type of language. But the question is whether or not... Well, the Supreme Court said that recently, in Ray, the appointment of a special prosecutor. I'm quoting the Supreme Court, our Supreme Court. Yes. The Road District is a public body, correct? The Road District is a public body, yes. So where is the argument that the Road District could withhold properly requested materials? Well, the argument is that it's not a public body. It's defined within this code. You just said it's a public body. Okay. You asked me whether or not that I agreed with the statement concerning public bodies. Yes. But within the definition of public bodies within the Act, it does not reach to the Road District. It's supposed to be broadly construed to cover all elected and appointed officials, is it not? I don't believe so. I think it's not. The intention of the legislature is encapsulated in the express language of the statute. And when the language that was selected and used by the legislature in articulating who is and is not covered in that, they were very specific as to identify specific entities that were covered by that. They named specifically townships in particular, but the Road District is not a township. It's a separate unit of government. If it was the intention of the legislature... But it is a unit of government. Yes, it's a unit of government, but the definition of public body within the statute does not say all units of government. It says these types of units of government, and it gives a specific enumeration of specific units of government that are included underneath the definition. All inclusive lists? Well, I think that the exclusion of... Or including but not limited to. They don't have the including but not limited to language. They specify those specific units of government, and then those specific units of government are to be included and to not have them included by the language the legislature adopted. It is those... It's the exclusion comes from the fact that if they had wanted all units of government to be included, they would have specified all units of government. Logically, why wouldn't it be included? Because the legislature didn't write that they were included in the statute. And so if the legislature wanted to include a Road District within the scope of that statute, it could have simply included the words Road District with it. How many units of government do you think there are in Illinois? One bazillion. So you understand the argument that it would be... That's a ridiculous argument that you have to list all units of government. To the contrary, Your Honor. What I would say to that, when I talk about the maxim, you know, what justice be done, though the heavens fall, is a reference to the translation meaning regardless of the consequences. The justice that is required is predicated upon interpreting the language that is expressed. I think Justice Scalia in his book, A Matter of Interpretation, had articulated that we looked at the language that the legislature adopted as opposed to the inferences that could potentially be dropped. So it could be very easy for this legislature to have written a statute that says all local units of government shall comply and be defined as part of the definition of public body within the context of this statute. The legislature didn't do that. It said these specific public bodies are included in the definition of public body. So the argument is that it's the legislature that holds and controls it, and it's the power of the people. In this case, it's much about the power of the people in many ways. It's about the power of the people to command that the legislature undertake its action. Counsel, if I may interrupt. Is this an issue of first impression? I believe it is. So there's no case law either way as to whether or not there is or there is not jurisdiction over highway commissioners relative to the FOIA Act? I've looked. My opposing counsel, I believe, had looked, and I don't believe that we were able to locate any authority specifically on that point. One point that this is just an issue that I have personally, and our court certainly does. You said in your brief there were eight issues, but you only identified seven. What's the eighth issue, or is that a typo? I'm sure it's a typo. How about the fact that in your briefs you do not cite the official reports for the Illinois case, which is required by Rule 6 and Rule 341, which is inconvenient for us because we have to go to a computer. We can't pull the book off our shelves. We don't have northeastern reports in our chambers. So that's just a word to the wise in the future. Comply with Supreme Court Rule 341 and Rule 6. Okay? Yes, Your Honor. That's clear to me. May I continue with my thought with respect to your inquiry, Your Honor? Yes. So with respect to the inquiry of the court as to this definition, it goes to this issue of the power of the people to make determinations. The power of the people elected, and when you ask about a political issue, and I had mentioned that earlier in a decades-long family relationship, the people in power, Mr. Gass or the new highway commissioner, with certain powers that are enumerated in the statute, amongst them are determining salaries and things of that nature during his term of office. And what has taken place here in this particular case is knowing that Mr. Miller was leaving office, that the people had already spoken. He chose to engage and execute a document that would, in essence, have him commanding and determining those particular terms and conditions well beyond the term of his office. The people granted him the power to be in that office for a finite period of time. They did not grant him the power beyond the term of his office, but he exercised the power of decision. Can I interrupt you again? Yes. Because I want to ask the same question. It's the same thing. Is this an issue of first impression relative to whether or not a union agreement, bargaining agreement, can last beyond the term of one of the cosigners? It's a case of first impression within the appellate courts, Your Honor. I believe the opposing counsel cited an opinion from the attorney general down in central Illinois with respect to something similar, but it has not been tested in the appellate courts. Well, the law enforcement, for example, throughout states that use unions that enter into contracts. Are you saying that a contract, for example, the Sheriff's Department, Sheriff's Office in DuPage County, Kane County, they have a union agreement, there's a new election, a new sheriff is elected, that you start all over again? The CPA, the collective bargaining agreement is just thrown out the window. Is that your argument? Well, my argument is not that it's thrown out the window. I'm saying that when it's executed, it has to be executed within the power that people gave that particular public official. And within the context of that. Was Mr. Miller still in office when the contract was executed? Yes, he was. Okay. And so my contention is that his power would have been able to execute a contract to the end of his term, and that if they had wanted to have a contract beyond the end of his term, that they should have negotiated a contract to the end of his term, and then that would have created the existence of a situation in which the employer would have the obligation at the end of the existing agreement to negotiate terms for the rest of the agreement, which would then comply with the statutory conveyance of power to the highway commissioner in his office. And your authority for that is? Well, it's the statutory authority because this hasn't been tested before. Are you referring to 85-30 of the Township Code? Is that what you're referring to? No, it's in the Highway Code. So the Highway Code specifies the specific enumerated powers of the highway commissioner. And within the Highway Code, he's granted the power to set wages. So nowhere within either the Highway Code or the Township Code does give a highway commissioner the power to execute a collective bargaining agreement. It's just not in there. And so the reliance has to be upon Dillon's Rule in order to rely upon doing something beyond what's set forth statutorily. And so what Dillon's Rule limits your power to do things to the extent that's necessary to enforce the powers that you have. So Mr. Miller wanted to execute a collective bargaining agreement. His power to do so was limited by his term. And so if his term of office ended and his power ends at that point in time, contemporaneous with the exercise of that power is also the levying process. We have a system where the levy is determined from time to time, and each year the highway commissioner submits a levy for the road district. Now, once a collective bargaining agreement is executed, the highway commissioner, if he's executed that within the confines of his term, he doesn't have any interference with respect to what he has to appropriate or levy against the taxpayers to satisfy that which he bargained for. But what's taking place here is you have the outgoing highway commissioner execute a document that then commands the subsequent highway commissioner to set forth levies that would be satisfactory to satisfy the obligations of an agreement that he himself has put forward. And that's a fundamental problem here. The fundamental problem is that if the exercise of the power by the public official goes beyond his term of office, and we allow that to happen, you know, why not have a collective bargaining agreement that goes for 50 years that sets forth, you know, and we pack in, just as in this case, new employees, you know, for the purpose of, you know, facilitating jobs so that the people who have spoken who are outraged by the prior behavior get silenced. And so the fundamental underpinning to this entire case is that we need to ignore the power of the people to decide the course of the unit of their government. Interestingly enough, the outrage has gone to the Illinois legislature, and they have adopted new rules for the abolishment of townships, in particular in McHenry County, because of the activity that's taking place in this particular township. Is that on the record? Would it be in the minutes of the state legislature? It would be in the minutes of the state legislature, because they adopted it into law and it became law. Let me stick to the legal issues, not the politics. I have a question, if you don't mind. You filed two notices of appeal, didn't you not? One in November and one in January? Yes, I did. I think the one you filed in January was on the 14th. Is that correct? I believe so. Was there anything pending in the trial court as of the 14th of January? I don't believe so. So there was nothing left for the trial court to do as of January 15th? I believe that's correct. Thank you. You'll have time for rebuttal, Mr. Hammond. Yes. Is it Deamer? Mr. Deamer. Deamer, yes. Deamer, thank you. Mr. Deamer. Good morning. My name is Brian Deamer and I represent James M. Sweeney in the International Union of Operating Engineers, Local 115. I want to address the validity of the collective bargaining agreement. I also want to discuss the FOIA issue, the award of attorney's fees, and the pending motion for sanctions. Immediately upon taking office in this case, Highway Commissioner Agent Gassert fired three employees of the road district on his first day in office, and a week later formally repudiated unilaterally the collective bargaining agreement entered into by the parties before he took office. Mr. Gassert seeks to have that CBA declared null and void in these proceedings. Could that argument have been raised before the ILRB, the argument that Mr. Hammond is making, that the CBA is void? I think, Your Honor, that the ILRB has exclusive jurisdiction over collective bargaining matters. I think that that is the agency charged with policing the collective bargaining process. If there was some flaw in the process or if there was some topic that Mr. Gassert believed was a prejudice subject to bargaining, I think his recourse would have been to file a charge with the Labor Board. I should also add that the collective bargaining agreement in this case was entered into on April 25, 2017. Mr. Gassert took office on May 15. Any charge at that point would have been timely under the six-month timeliness provision under the Labor Act. So I think that any of the complaints, and there are many in the complaint or the counterclaim, any of the complaints regarding collective bargaining and the process generally should have been filed with the Labor Board as that's the agency that's been vested with jurisdiction to police that process. And they have original and exclusive jurisdiction over all those matters, and the failure to raise that claim, they're gone, correct? That is correct. I believe that is correct, Your Honor. Since we're asking about motives or strategies or strategeries, why did you file a FOIA? Why didn't you file before the Labor Relations Board? I think at that point the FOIA request was filed after the initial firings and then the repudiation. The FOIA request saw emails by and between Mr. Gassert. I believe the operative date was April 15, so we were trying to get a handle on what was going on, what the communications were. At that point, we as the labor union representing the employees were investigating the underlying facts, and we thought that the FOIA request was the most effective way to get at some of these issues. And again, that was picking up on the FOIA issue, if I may. The initial response was unduly burdensome, which is an odd response from a public body that doesn't think it's covered by the FOIA laws. I should also add that the Local 150 filed a counterclaim. In answering Paragraph 4 of the counterclaim, the Road District admitted that it was associated with Algonquin Township. More importantly, in its answer to Paragraph 5, the Road District admitted that the circuit court had jurisdiction over the controversy, which at that time was only the FOIA litigation. So they admitted that they were covered by the FOIA law. They admitted that if they truly weren't covered by FOIA, the circuit court would not have had jurisdiction to resolve that controversy. I should also quote— Well, what's the implication of filing a counterclaim? Does that then mean that it will go soon or conclude that the defendants thought the trial court had jurisdiction? The defendants of that— By filing a counterclaim. So the Road District filed a counterclaim to the lawsuit, to the original FOIA lawsuit, seeking to have the underlying contract declared null and void. That was the counterclaim. And so does that imply that the defendants felt that the trial court had jurisdiction over the case? I believe that's the case. And if it had jurisdiction over the case and it supposedly tacitly admitted that it was subject to the FOIA Act on a basis rather than not being subject to it but being unduly burdensome, it would seem that all the arguments relative to the trial court's inability to resolve the situation is, at worst, disingenuous. I believe that's the case. One final point. The Illinois Supreme Court and the Seventh Circuit have both held that Road District—found Road Districts to be municipal corporations. Municipal corporations are plainly covered by the statute under FOIA. Do you agree with counsel that—opposing counsel that there is no case law one way or the other as to whether or not FOIA applies to highway commissions? I don't know that—I can't think of a litigated case where somebody has brought that issue before the court challenging jurisdiction, especially given the fact that it is. And has there been a case where a FOIA request was made upon a highway commission and they argued whether or not the information was exempt or unreasonably burdensome? I don't have that case, but it wouldn't surprise me. I mean, I think that that's a common refrain to a FOIA request. So there is no case that relates to a FOIA action relating to a highway commission? That narrow question? I don't believe that there's a reported case on the interpretation of public body rather than the broad question. It is not an interpretation of public body. It's a question of whether or not there was a case involving a FOIA request to a municipal corporation known as a highway commission. Because if there was—and Mr. Hanlon is correct—it would seem to me that the case should have been dismissed, correct? Correct. It shouldn't have been decided on the merits? Correct. So my question to you, is there a case? I don't know of a case. Getting back to the validity of the contract, I think that this case raises a simple issue of whether a CBA can survive—span public administrations. There are really two statutes at play. It's the Highway Code and the Illinois Public Labor Relations Act. The Highway Code creates the road district and establishes the highway commissioner as its head. It gives the highway commissioner broad authorities to set the terms and conditions of employment, to set compensation levels, to set benefit levels, and all the rest. The highway commissioner has the exclusive power to control that workforce. The Illinois Public Labor Relations Act comes into play by virtue of Section 7. When the labor board certifies a union as the exclusive bargaining representative, that triggers a bargaining obligation on the public employer. Section 7 imposes the affirmative duty to bargain in good faith, which is what Mr. Miller did in this case. The union was certified on April 10th. At that point, the duty to bargain was triggered. Mr. Miller had the obligation under state law to bargain with the union. He did so, executed a contract on April 25th. Section 21 of the Labor Act expressly allows multi-year contracts. There's only one exception in the Labor Act, and that's found in Section 21.5. It has a carve-out for state constitutional officers. In that case, the collective bargaining agreement can only extend six months into the term of office to allow the successor constitutional officer time to renegotiate a contract. I would note, even under that narrow exception, the road district's claim fails. The General Assembly contemplates a six-month period to negotiate the contract to create some continuity and avoid the chaos. In this case, the road district terminated the contract one week into their term. So it fails even under that standard. We've been talking about cases of first impression. Let me just ask you one question about that. Yes. Okay. So Section 7 creates a duty to bargain in good faith, and you're saying that that's what Mr. Miller did and so forth. Is there any authority in any statute to allow anyone to peek behind the curtain and to look at motives or alleged motives as far as bargaining? Because we've heard a lot in the brief and in argument today about the motives behind the bargaining that took place and so forth. Is there any authority to look at any of those motives? I think, getting back to the initial question about the exclusive jurisdiction of the labor board, if there's a flaw in the bargaining process, that needs to be brought before the labor board. If there was some flaw or collusion, for example. Or collusion. I think that those are all matters properly brought before the labor board. And if it's not brought before the labor board, then what? Then I think it's waived. The state's attorney of Johnson County case, the labor board decision, is on all fours in this case. Incumbent state's attorney loses an election. Between the date of the election and the date of the new term of office, the employees organize a union. The outgoing state's attorney negotiates a contract with the union. It's a five-year contract, same as this case. That contract is signed the last week in office. New state's attorney takes office, sends a bargaining demand to the union, says, I want to bargain a new contract. Union says, we don't have to. We already have a contract. New state's attorney goes to the labor board, files charges. Executive director dismisses those charges. It goes to the full board. The board affirmed the executive director's dismissal, and the holding, I think, is important in this case. The ILRB held. The employer in this case is the state's attorney, not the individual office holder. And the employer's contention that all continuing contracts are invalidated by a change in office holder is patently ridiculous, as it would throw government into chaos. The Labor Act allowed to impose the duty to bargain. It allows for multi-year contracts. I would also add, because this is not part of the record, but it was widely reported in the news, Mayor Daley, in anticipation of securing the summer Olympics, entered into a 10-year contract with the building trades. Longer-term contracts are not unusual. People enter into them for all sorts of reasons. Mayor Daley decided that the benefit of the long-term contract was to avoid labor strife and the eventual buildup to the Olympics. There's nothing untoward about a longer-term contract. Both parties often, three to five, whatever the term is, both people are hedging their bets on the future, on the uncertainties of the future. A longer-term contract negotiated before the Great Recession, the union negotiators look like geniuses. On the other hand, if you negotiate a longer-term contract with modest wage increases, and there's tremendous inflationary trend, you look like a goat. So people are making these decisions all the time. The other thing I would note is the road district, both in this case and in the case before the circuit court, does not cite or discuss Section 21, which is the operative language on the multi-year contracts, or address the Jackson County case. We believe that the circuit court properly founded the union's favor on the FOIA litigation, properly awarded fees in that case. With respect to the fees, can you respond to the argument you briefed, although counsel didn't mention it in his opening argument this morning, that the awarding of fees are improper because it was essentially in-house counsel? Correct. The case cited, the uptown case, talks about fees not being awarded when the lawyers are appearing pro se or providing their legal services as a gratuity. This local union is built on an economic model whereby union members pay dues, and the union provides representation, both at the bargaining table and in the courts. This is an economic arrangement. There's no pro se aspect to this. There's no gratuity. In this case, Local 150, well, in all cases, Local 150 uses both in-house lawyers and lawyers from private law firms. This case is a perfect example of Mr. Gummerson, a private lawyer, has filed an appearance, as well as several in-house lawyers from Local 150. The same member dues monies are spent to pay for private lawyers, as well as to pay the salaries, not only the salaries, but the benefits, the office space, the support staff, all the costs that go into employing the in-house lawyers. We think that the FOIA laws and the fee shift, which is mandatory, not permissive, which they argued in their brief, it's a mandatory fee shift, and the point of this is to incentivize compliance with FOIA requests. There's nothing in the statute that makes a distinction between in-house lawyers and private lawyers. The economic model, like I said, is based on members' dues money. The FOIA request was made on behalf of the members. This was an economic transaction between the union and its members. There's no gratuity involved, and this was not a pro se arrangement. We don't believe that the Uptown case applies. One of the final things I want to discuss is the sanctions motion that's currently before the court. In their reply brief on page 13, the plaintiffs, the Road District argues, and I'm quoting, plaintiffs slash appellees tell us in their brief at page 42 that it provides these services to its members at no cost. That admission commands repeating at no cost. They repeated that in their brief. Page 42 of our brief does not say that. At page 42 of the brief filed by Local 150, the quote is, quote, instead, Local 150 performed work in this case for its members at a cost to its members and is therefore entitled to recover fees. We believe this is sanctionable conduct. It was a misrepresentation of the brief, and more importantly, we pointed this out to counsel when we were before the circuit court before he filed this brief, and he filed it anyway. So we think that sanctions are appropriate in this case because it's a misrepresentation. However, the court comes down on the attorney's fees. We're at least entitled to have our legal position represented accurately to the court. So for all those reasons, we ask that the court affirm the circuit court's decision in its entirety. Thank you. Thank you, Mr. Dean. Mr. Hammond, please follow up. Well, I'd like to commence by addressing this issue of sanctions. There has never been a case that I've been involved with the Local 150, and there's numerous cases in which they do not seek sanctions. It's a litigation tactic that is not reserved for those situations that sanctions are warned. Do you want to address that last argument, though, that what appears to be, I'm looking at them both right now, appears to be a misstatement of their statement? Well, Your Honor, as I interpreted the statement at the time that I wrote it, I inferred that what they were contending was that the collective cost that they have are their members' costs. But that's not the litigants' cost. And so I inferred and interpreted that to mean that they were acknowledging that they are not charging those people. That's a direct quote, though, right? You put it in quotation marks. And if I misquoted it, then I made a mistake, Judge. Making mistakes isn't necessarily sanctionable. The argument is that it was not just a mistake, that it was an intentional misrepresentation to mislead this Court. That's the argument. Well, at no point in time did I intend to mislead this Court. And the argument that I am attempting to make, and I've attempted to make below, is that the Local 150 does not pay attorney's fees. And what's really here that's at issue, they look towards this award of attorney's fees and the affidavit of Dale Pearson, their general counsel to the meeting, he was actually present here in Portland today, in which they articulate that they have rates. Now, rates assume and infer that there's this exchange in Congress. You know, and that's why the Lodestar system begins with what the customary rate is. But they don't have rates in the traditional sense. They have what they predetermined to be their own rates, not something that's obtained in exchange in the marketplace. So when I looked at their brief and I looked at it, I interpreted it and looked at it with the understanding that And what they were saying is that there's a payment, you know, or these payments aren't being made, that they have their own cost. To the extent that I misquoted them, that's my mistake. But to the extent that there's an intention to mislead this Court, that's totally not the case. Well, actually, counsel had said that you did it twice. I'm looking at your brief and you did it four times in quotation marks to its members at no cost or at no cost or at no cost to its members. Each one of those four different times is in quotation marks. And I think that I was using the no cost as a reference to what there was at play here. is that none of its members pay attorney's fees. You know, and here's what's telling me. When you write the check to them for the attorney's fees, you don't write it to their law department. You write it to a local 150. And that means they have to share their attorney's fees with non-numbers or non-attorneys. Let's talk about the Act. Is there an exception in the FOIA Act for attorney's fees in a situation such as this? The Act says that attorney's fees are mandatory. But the Act doesn't allow for the collection of fees the same way that an attorney would collect his own attorney's fees in a case. So, for instance, let's say I work for a firm and the firm has a complaint. And we go to collect our attorney's fees that were earned in an underlying case. And in that collection process, the courts aren't going to award us our attorney's fees to collect our own fees. If I hired a third party firm to do it, then that would be permissible because I would have incurred the fees. The attorneys who work for local 150 are paid by local 150. The outside counsel that are hired by local 150 are paid by local 150, correct? By local 150, yes. So, they spend time, they spend hours writing briefs, preparing documents, arguing in court. So, you're saying that under FOIA, they should not be paid because they're in-house? Yes. And what is the authority for that? Uptown does not apply. And, Judge, with respect to- Uptown is involving attorneys who appear pro bono and are providing services for free. They're going into the litigation. They acknowledge that they're doing this as a service, not like these lawyers who are working and expect to be paid. Can I respond to that, Your Honor? Yes. I believe that that's a misstatement of the Uptown case. And I believe that the authority in Uptown was that they specifically articulated that they were not pro se lawyers. And that they were not appearing pro se. Because the argument with respect to pro se lawyers is different than it is in-house counsel. And that's what the proposition of Uptown Law Center was good for. So, with respect to the Uptown decision, I believe that the court is in error with respect to its interpretation of it. I'm going to ask you to reconsider that. And also, with respect to that same point, the issues that are associated with the demands under FOIA allow the recovery of actual attorney's fees. And there's plenty of authority out there where if you don't incur your attorney's fees, then you're not entitled to get them underneath the act. Thank you, Mr. Hammond. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you.